ELECTRONICALLY FILED
2023 Jan 13 PM 12:43
Anthony P. Vivo, CLERK OF COURT - MAHONING

**Ex. A**

# IN THE COURT OF COMMON PLEAS
## MAHONING COUNTY, OHIO

| | |
|---|---|
| MICHAEL GATELY<br>9516 Williams Road<br>Diamond, Ohio 44412<br><br>               Plaintiff,<br><br>v.<br><br>APEX CONTROL SYSTEMS, INC.<br>c/o Thomas Drakulich<br>Statutory Agent<br>15 N. Johnson Road<br>Sebring, Ohio 44672<br><br>    -And-<br><br>THOMAS DRAKULICH<br>15 N. Johnson Road<br>Sebring, Ohio 44672<br><br>    -And-<br><br>AMY FARKAS<br>751 N. 21st Street<br>Sebring, Ohio 44672<br><br>    -And-<br><br>MATTHEW HOWELL<br>751 N. 21st Street<br>Sebring, Ohio 44672<br><br>              Defendants. | CASE NO. 2023 CV 00078<br><br>JUDGE: DURKIN<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff Michael Gately, by and through his undersigned counsel, as his Complaint against Defendants, hereby states and avers the following:

### PARTIES, JURISDICTION & VENUE

1. Gately is a natural person and resident of Diamond, Portage County, Ohio.

2. Defendant Apex Control Systems, Inc. ("Apex") is a domestic, for-profit corporation organized under the laws of the State of Ohio, headquartered at 15 N. Johnson Road, Sebring, Mahoning County, Ohio 44672.

3. Upon information and belief, Defendant Thomas Drakulich is a natural person and resident of the State of Ohio.

4. Upon information and belief, Defendant Amy Farkas is a natural person and resident of the State of Ohio.

5. Upon information and belief, Defendant Matthew Howell is a natural person and resident of the State of Ohio.

6. All material events alleged in this Complaint occurred in Mahoning County, Ohio.

7. Personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1) and (3).

8. Venue is proper pursuant to Civ. R. 3(C)(1), (2), (3) and/or (6).

9. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

10. Within 300 days of the discrimination alleged below, Gately dually filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission, Charge No. 532-2022-02304.

11. On October 20, 2022, the EEOC issued Gately a Notice of Right to Sue letter for Charge No. 532-2022-02304, a copy of which is attached hereto as Plaintiff's Exhibit 1.

12. Gately has exhausted all available administrative remedies.

13. Within 90 days of receipt of the Notice of Right to Sue letter, Gately filed this Complaint.

## FACTS

14. Gately is a former employee of Apex.

15. Apex hired Gately on or about June 26, 2017.

16. Gately worked for Apex as a Control Panel Assembler.

17. While working at Apex, Gately was sexually harassed by one of his supervisors, Gary Caldwell.

18. Caldwell sent Gately explicit pornographic material during work hours.

19. Caldwell sent Gately explicit pornographic material outside of work hours.

20. Gately did not want to receive explicit pornographic material from Caldwell.

21. Gately did not reciprocate Caldwell's interest in explicit pornographic materials.

22. Gately told Caldwell he was not interested in pornography.

23. Caldwell told Gately that he felt he could be his true self around Gately.

24. Gately felt uncomfortable with Caldwell's unsolicited and personal admission.

25. Caldwell retaliated against Gately after Gately refused to reciprocate Caldwell's explicit pornographic materials.

26. Caldwell retaliated against Gately by telling Gately he could not speak to his coworkers while clocked in at work.

27. Caldwell retaliated against Gately by intentionally and maliciously injuring Gately.

28. On or about March 23, 2021, Caldwell saw Gately speaking with a coworker and Caldwell made the decision to use the shop air hose to injure Gately ("Malicious Injury").

29. During the Malicious Injury, Caldwell carefully and intentionally put on hearing protection for his own ears.

30. During the Malicious Injury, Caldwell reached for a pressurized air hose near Gately and intentionally pulled it loose causing it to suddenly release high pressured air.

31. During the Malicious Injury, the suddenly released pressurized air coming from the air hose made a loud sound near Gately's ear.

32. As a result of the Malicious Injury, Gately suffered damage to his hearing, causing severe and long-lasting pain.

33. As a result of the Malicious Injury, Gately continues to suffer excruciating headaches, chronic pain, and sleep paralysis.

34. As a result of the Malicious Injury, Gately suffered severe emotional distress.

35. Immediately after the Malicious Injury, Gately reported it to his supervisor, Matthew Howell ("Report of Malicious Injury").

36. Gately's Report of Malicious Injury was a protected complaint to Howell about Caldwell sexually harassing Gately ("Sexual Harassment Complaint").

37. After making the Sexual Harassment Complaint to Howell, Gately hired an attorney.

38. After the Sexual Harassment Complaint, Howell interviewed and interrogated Gately multiple times.

39. On or about March 25, 2021, Apex determined there was enough information and substantiated allegations against Caldwell to terminate his employment.

40. Despite Apex determining it gathered enough information to conclude its investigation of the Sexual Harassment Complaint, managers Drakulich and Farkas continued to harass Gately by demanding he write his Sexual Harassment Complaint in detail.

41. On or about March 26, 2021, Howell met with Gately and told him that Caldwell did not want to go through "the whole Joe Wells thing and stuff again."

42. Joe Wells made a complaint of sexual harassment against Caldwell before Gately made his Sexual Harassment Complaint against Caldwell.

43. Apex knew of Caldwell's prior sexual harassment incidents.

4

2023 CV 00078

44. During the March 26, 2021 meeting with Howell, Gately asked if Caldwell was sent home as a result of the Sexual Harassment Complaint.

45. Howell told Gately that Caldwell was not sent home.

46. Gately asked if Howell escalated his Sexual Harassment Complaint to Drakulich, and Howell said he did not because the matter was "over his head."

47. Drakulich joined Howell and Gately during the March 26, 2021 meeting and Drakulich admitted that he knew of a similar sexual harassment incident with Caldwell that happened before Gately's Sexual Harassment Complaint.

48. On or about March 26, 2021, Gately's attorney sent notice to Apex's Human Resources Manager, Amy Farkas, that Gately was represented by legal counsel and the legal counsel requested to be contacted regarding the nature and extent of Apex's investigation of Caldwell.

49. After Apex received the legal counsel's notice of representation, Drakulich ignored the notice and contacted Gately directly to demand Gately discuss the Sexual Harassment Complaint outside of his attorney's presence.

50. When Gately did not acquiesce to Drakuilch's demand to violate his right to attorney-client privileges, Farkas contacted Gately directly and demanded Gately discuss the Sexual Harassment Complaint outside of his attorney's presence, and to do so by noon that day or else face severe consequences.

51. Farkas told Gately if he refused to write a detailed description of the Sexual Harassment Complaint, Apex would be unable to terminate Caldwell's employment.

52. Gately said he would write his Sexual Harassment Complaint, but he requested more time to do it because the investigation and the questioning was difficult for him emotionally.

2023 CV 00078

53. When Farkas misled Gately to believe his written Sexual Harassment Complaint was the sole impediment to Caldwell's termination, Farkas and Howell had already collected incriminating statements from other employees proving Caldwell sexually harassed his subordinates.

54. On or about March 29, 2021, Gately's attorney notified Drakulich that he was working with Gately on a statement regarding the Sexual Harassment Complaint and demanded that Apex and its management cease leveraging managerial power over Gately in return for his rushed compliance in giving a statement.

55. Gately suffered ear damage as a result of the Malicious Injury.

56. Gately saw medical doctors for treatment for his ear damage.

57. Gately suffers from a disability.

58. Gately is disabled.

59. Gately informed Apex of his disabling condition.

60. Gately informed Drakulich of his disabling condition.

61. In the alternative, Apex perceived Gately as being disabled.

62. In the alternative, Drakulich perceived Gately as being disabled.

63. Gately's ear damage constituted a physical impairment.

64. Gately's ear damage substantially impaired one or more of his major life activities, including but not limited to hearing and working.

65. Apex perceived Gately's ear damage to substantially impair one or more of his major life activities, including but not limited to hearing and working.

66. Drakulich perceived Gately's ear damage to substantially impair one or more of his major life activities, including but not limited to hearing and working.

67. Gately requested accommodations from Apex to assist with his disability.

68. Gately requested to be provided better ear protection than Apex currently provided its employees.

69. Apex denied Gately's request for better ear protection.

70. Gately requested longer break times.

71. Apex denied Gately's request for longer breaks.

72. Gately's requested accommodations were reasonable.

73. Gately's requested accommodations would have been effective and would not have posed an undue hardship to Apex.

74. Apex failed to engage in the interactive process of determining whether Gately needed accommodations.

75. Apex treated Gately differently than other similarly situated employees based on his disabling condition.

76. Drakulich treated Gately differently than other similarly situated employees based on his disabling condition.

77. Apex treated Gately differently than other similarly situated employees based on his perceived disabling condition.

78. Drakulich treated Gately differently than other similarly situated employees based on his perceived disabling condition.

79. During his employment, Gately qualified for FMLA leave.

80. During his employment, Gately requested FMLA leave.

81. Instead of providing Gately with necessary FMLA documents, Drakulich gave Gately ear protection.

82. Apex violated Gately's FMLA rights when it interfered with Gately's request for FMLA leave.

83. Drakulich violated Gately's FMLA rights when he interfered with Gately's request for FMLA leave.

84. After Gately requested FMLA leave, Apex retaliated against him.

85. After Gately requested FMLA leave, Drakulich retaliated against him.

86. Gately provided Drakulich a handwritten note, dated August 6, 2021.

87. Drakulich reported to Farkas that the note looked like a threat and resignation from Gately to Drakulich and Apex.

88. The note was not addressed to Drakulich or Apex.

89. The note was not a threat nor a resignation from Gately.

90. On or about August 6, 2021, Gately told Drakulich he wanted Apex to take his complaints of ear pain seriously.

91. On or about August 9, 2021, Apex retaliated against Gately by terminating his employment.

92. Farkas notified Gately of the termination but refused to state a reason for the decision.

93. Drakulich told the Chief of Police in Sebring, Ohio that Gately was fired due to erratic behavior and that Gately had mental health issues.

94. Drakulich told the Chief of Police that Gately suffered with mental health issues to retaliate against Gately.

95. Drakulich described Gately's vehicle to the police and asked the department to patrol the Apex parking lot to look out for Gately's vehicle, stating his belief that Gately might cause damage to the building.

96. Drakulich had no basis for assuming Gately would damage the building, but told the police it was a possibility to retaliate against Gately.

97. Apex willfully retaliated against Gately.

8

2023 CV 00078

98. Drakulich willfully retaliated against Gately.

99. As a direct and proximate result of Defendants' acts and/or omissions, Gately has suffered and will continue to suffer damages.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

100. Gately restates each and every foregoing paragraph of this Complaint, above, as if it were fully rewritten herein.

101. Gately suffers from a medical condition.

102. The medical condition constitutes a physical impairment.

103. Gately's medical condition substantially impaired one or more of his major life functions, including but not limited to hearing and working.

104. As a result of suffering from the medical condition, Gately is disabled.

105. Alternatively, Defendants perceived Gately to be disabled.

106. Despite any real or perceived disability, Gately was capable of performing his essential job functions with or without reasonable accommodations.

107. Defendants treated Gately differently than other similarly-situated employees based on his disabling condition.

108. Alternatively, Defendants treated Gately differently than other similarly-situated employees based on his perceived disabling condition.

109. On or about August 9, 2021, Defendants terminated Gately's employment without just cause.

110. Defendants terminated Gately's employment based his disability.

111. Alternatively, Defendants terminated Gately's employment based his perceived disability.

112. Defendants violated R.C. § 4112.02(A) when they discharged Gately based on his disability.

113. Alternatively, Defendants violated R.C. § 4112.02(A) when they discharged Gately based on his perceived disability.

114. Defendants violated R.C. § 4112.02(A) by discriminating against Gately based on his disabling condition.

115. Alternatively, Defendants violated R.C. § 4112.02(A) by discriminating against Gately based on his perceived disabling condition.

116. Gately suffered emotional distress as a result of Defendants' conduct and is, therefore, entitled to emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

117. As a direct and proximate result of Defendants' conduct, Gately has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: FAILURE TO ACCOMMODATE UNDER R.C. § 4112.01 *et seq.*

132. Gately restates each and every foregoing paragraph of this Complaint, above, as if it were fully rewritten herein.

133. Gately informed Defendants of his disabling condition.

134. Gately requested accommodations from Defendants to assist with his disabilities.

135. Gately's requested accommodations were reasonable.

136. There was an accommodation available that would have been effective and would have not posed an undue hardship to Apex.

137. Defendants failed to engage in the interactive process of determining whether Gately needed an accommodation.

138. Defendants failed to provide an accommodation.

139. Defendants violated R.C. § 4112.02(A) by failing to provide Gately a reasonable accommodation.

140. Gately suffered emotional distress as a result of Defendants' conduct and is, therefore, entitled to emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

141. As a direct and proximate result of Defendants' conduct, Gately has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

142. Gately restates each and every foregoing paragraph of this Complaint, above, as if it were fully rewritten herein.

143. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

144. Apex is a covered employer under the FMLA.

145. During his employment, Gately qualified for FMLA leave.

146. During his employment, Gately requested FMLA leave by asking Defendants if he qualified to take FMLA leave.

147. Defendants failed to properly advise Gately of his rights under the FMLA.

148. Defendants unlawfully interfered with Gately's exercise of his/her rights under the FMLA in violation of Section 105 of the FMLA and Section 825.220 of the FMLA regulations.

149. Defendants violated section 825.300(c)(1) of the FMLA and interfered with Gately's FMLA rights when Defendants did not honor Gately's request for FMLA leave.

150. As a direct and proximate result of Defendants' conduct, Gately is entitled to all damages provided for under 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

## COUNT IV: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION IN VIOLATION OF R.C. § 4112.02(J)

150. Gately restates each and every foregoing paragraph of this Complaint, above, as if it were fully rewritten herein.

151. Pursuant to R.C. § 4112.02(J), it is unlawful "[f] or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice[.]"

152. Drakulich aided, abetted, incited, coerced and/or compelled Apex's discriminatory termination of Gately's employment.

153. Drakulich violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting and inciting discrimination.

154. Farkas aided, abetted, incited, coerced and/or compelled Apex's discriminatory termination of Gately's employment.

155. Farkas violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting and inciting discrimination.

156. Howell aided, abetted, incited, coerced and/or compelled Apex's discriminatory termination of Gately's employment.

157. Howell violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting and inciting discrimination.

158. Gately suffered emotional distress as a result of Defendants' conduct and is, therefore, entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

159. As a direct and proximate result of Defendants' conduct, Gately has suffered and will continue to suffer damages, including economic and emotional distress damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Michael Gately respectfully requests that this Honorable Court grant the following relief:

(a) Issue an order requiring Apex, retroactively, to restore Plaintiff to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Plaintiff for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Plaintiff's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Kevin A. Buryanek*
Kevin A. Buryanek (0099300)
Daniel S. Dubow (0095530)
SPITZ, THE EMPLOYEE'S FIRM
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
kevin.buryanek@spitzlawfirm.com
daniel.dubow@spitzlawfirm.com

*Attorneys for Plaintiff Michael Gately*

## JURY DEMAND

Plaintiff Michael Gately demands a trial by jury by the maximum number of jurors permitted.

/s/ *Kevin A. Buryanek*
Kevin A. Buryanek (0099300)
Daniel S. Dubow (0095530)
**SPITZ, THE EMPLOYEE'S FIRM**

EEOC Form 161-B (01/2022)          **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | | | |
|---|---|---|---|
| To: | Michael Gately<br>16579 Republic Avenue<br>Berlin Center, OH 44401 | From: | Cleveland Field Office<br>1240 E 9th St, Suite 3001<br>Cleveland, OH 44199 |

| | | |
|---|---|---|
| EEOC Charge No.<br>532-2022-02304 | EEOC Representative<br>Legal Unit | Telephone No.<br>(267) 589-9707 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

- Less than 180 days have elapsed since the filing date. I certify that the Commission's processing of this charge will not be completed within 180 days from the filing date.

- The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA):* You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By: Dilip Gokhale
10/20/2022

Enclosures(s)          **Dilip Gokhale**
                       **Director**

cc:  John A Tucker
     John A. Tucker Co., LPA
     11367 Lair Rd.
     Alliance, OH 44601

     John Stranman
     The Spitz Law Firm
     25825 Science Park Dr, Ste 200
     Beachwood, OH 44122

     Patricia Brandt
     The Spitz Law Firm
     25825 Science Park Dr, Ste 200
     Beachwood, OH 44122

2023 CV 00078

Enclosure with EEOC
Form 161-B (01/2022)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS   --   **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION   --   **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please **make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

2023 CV 00078